# Lyne's Adm'r *v.* Wann.

*Bill in Equity by Creditor, to set aside Conveyances as Fraudulent and Voluntary.*

1. *Equitable relief against probate decree, on ground of errors or mistakes.*—A defendant in a probate decree, rendered on final settlement of his accounts as executor, administrator, or guardian, seeking equitable relief against it on account of alleged errors of law or fact (Code, §§ 3837–39), must show that the errors complained of occurred without fault or negligence on his part.

2. *Homestead exemption; occupancy.*—A claim of homestead exemption can not prevail, without averment and proof of occupancy.

3. *Conveyance to creditors; when fraudulent as to others.*—A conveyance or sale by an insolvent debtor to one of his creditors, in payment of an existing debt, will not be held fraudulent as against other creditors,

[Lyne's Adm'r v. Wann.]

.because of an actual fraudulent intent on his part, unless the creditor had knowledge of that intent, or participated in the fraud.

4. *Use of wife's funds by husband; whether conversion or investment.* When the husband purchases property at an administrator's sale, and is .allowed a credit on his purchase to the extent of his wife's distributive share of the estate, this is not an investment for the wife, but a conversion of her interest, and renders him her debtor for the amount.

5. *Same; as consideration of conveyance to wife.*—If the husband re- ·ceives moneys belonging to his wife's statutory estate, and converts them to his own use, thereby becoming a debtor to her to that amount, this constitutes a valuable consideration to support a subsequent convey- ance to her; but he is not liable for interest on such moneys, nor for property belonging to her which he received, but which he is not shown to have sold and converted to his own use; and as to these items, the conveyance would be without a valuable consideration.

6. *Fraudulent conveyance; when allowed to stand as valid security.* When a conveyance is assailed by creditors on the ground of fraud, and the grantee is not implicated in the fraudulent intent of the grantor, the ·conveyance will be allowed to stand as a valid security to the extent of the actual consideration proved to have been paid.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 5th February, 1881, by Peter W. Lyne, as the administrator of the estate of his deceased wife, Mrs. Sarah F. Lyne, against Isaac D. Wann and his wife, Mrs. Lucinda E. Wann; and sought to set aside on the ground of fraud, actual and constructive, several con- veyances of property to Mrs. Wann, and to subject the prop- erty to the payment and satisfaction of a debt due and owing by said Isaac D. Wann to the estate of the complainant's intestate. Mrs. Lyne, the complainant's deceased wife, was a daughter of one Robert Owen, who died in her infancy; and on the 20th November, 1860, letters of guardianship of her and her estate were duly granted, by the Probate Court of Madison, to said Isaac D. Wann. On the same day, the sum of $1,037.08 was paid to said guardian, by the administrator of Owen's estate, as the ward's distributive share of the estate. On the 24th Decem- ber, 1872, the complainant and his wife were married; and on her death, intestate, in February, 1875, letters of adminis- tration on her estate were granted to him. On final settlement of Wann's accounts as guardian, on September 30th, 1880, a decree was rendered against him, in favor of the complainant as administrator, for $2,961.13; and execution having been is- sued on this decree, against said guardian and the sureties on his bond, and returned "No property found," this bill was filed to subject the property standing in Mrs. Wann's name, partic- ularly described in the bill, to the satisfaction of the decree, on the ground that the conveyances to her were without consider- ation moving from her, and that the title was conveyed to her, by and at the instance of her husband, for the purpose of hin-

dering, delaying, and defrauding his creditors, and particularly the complainant, in the collection of their debts. There were two conveyances to Mrs. Wann; the first dated October 6th, 1866, by which said Isaac D. Wann conveyed to her certain lands and lots in the town of Vienna, on the recited consideration of $300 in hand paid; and the second dated September 6th, 1866, by which the sheriff conveyed to her, as the purchaser at a sale under execution against John C. Drake, a tract of land containing 720 acres, at the price of $296. This execution was issued on a judgment against said Drake, in favor of Isaac D. Wann; and the bill alleged that said Isaac D. was himself the purchaser at the sale, and paid the price bid by entering it as a credit on the judgment. This tract of land was sold in March, 1869, for unpaid taxes assessed against it, and a deed was afterwards executed to Mrs. Wann, as the purchaser; and the bill sought to set aside this deed also, on the same allegations of fraud.

Separate answers were filed by the defendants, which were, however, substantially the same. They denied the charges of fraud, and asserted the validity of the several conveyances to Mrs. Wann; the consideration moving from her husband to her being, as alleged, his indebtedness to her for moneys which he had received during their coverture, belonging to her statutory estate, which he had used and converted to his own use; these moneys being $1,037.08, "received from the estate of her father in 1860," and $828.02, "received from the estate of her grandfather, Thomas Blackwell, in April, 1860." Wann also filed a cross-bill, in which he denied the validity of his appointment as guardian of said Sarah F. Lyne (or Owen), and assailed the correctness of the decree against him, specifying items in the account which ought not to have been charged against him.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, but held it unnecessary to pass on the questions raised by the cross-bill, which he also dismissed; and his decree dismissing the bill is now assigned as error.

D. D. SHELBY, for the appellant, cited *Otis v. Dargan*, 53 Ala. 178; *Pickett v. Pipkin*, 64 Ala. 520; *Hubbard v. Allen*, 59 Ala. 283; *Humes v. Scruggs*, 4 Otto, 22; *Ticknor v. Wiswall*, 9 Ala. 309.

JNO. D. BRANDON, *contra*, cited *Northington v. Faber*, 52 Ala. 45; *Davidson v. Lanier*, 51 Ala. 318; *Young v. Dumas*, 39 Ala. 60; *Tompkins v. Nichols*, 53 Ala. 197; *Marshall v. Croom*, 59 Ala. 121; *Sterry v. Arden*, 1 John. Ch. 261; *Verplanck v. Sterry*, 12 Johns. 336.

[Lyne's Adm'r v. Wann.]

STONE, J.—The prayer of the cross-bill asks relief in the alternative. In its primary aspect, it is contended it makes a case within the provisions of section 3837 of the Code of 1876; the section which provides for the correction of errors of law or of fact, committed in the settlement of estates in the Probate Court. This claim, considered either in the form in which it is presented in the original answer, made a cross-bill, or in the amended cross-bill, is fatally defective as a basis of relief. It fails to show the errors and injury complained of were without the fault or neglect of Mr. Wann, according to the construction this court has uniformly placed on those words.—*Bowden v. Perdue*, 59 Ala. 409; *Pickett v. Pipkin*, 64 Ala. 520; *Beadle v. Graham*, 66 Ala. 102; *Collier v. Falk*, *Ib.* 223; *Broda v. Greenwald*, *Ib.* 538. Nor is the cross-bill any more successful in the claim of homestead. It contains no averment, that the premises in which homestead is claimed, were, or ever had been *occupied* by Mr. Wann. This is a fatal omission.—*Blum v. Carter*, 63 Ala. 235. In the present controversy, we must treat the probate decree as rightly ascertaining Wann's liability, and the extent of it.—*Pickett v. Pipkin*, 64 Ala. 520.

The present bill is by a creditor—judgment creditor—of Mr. Wann, to subject certain described lands to the payment of said claim, on the alleged ground that they were and are the property of said Wann, and had been fraudulently, and without consideration, conveyed to his wife, for the purpose of delaying and hindering his creditors generally, and the complainant specially, in the collection of their said claims. The conveyances to the wife were made long after the debt was incurred, to the payment of which the lands are sought to be subjected. The defense is, that Mr. and Mrs. Wann intermarried since 1850, and that after the marriage there accrued to her, from the estates of her father and grandfather, moneys, her statutory separate estate, which were received by her husband and trustee; and being used and converted by him, the lands in controversy were conveyed and procured to be conveyed to the wife, in payment of such indebtedness. There were two separate conveyances; first, the lots in the village of Vienna; and second, the lands near by, known as the "Drake place."

We do not understand it to be disputed that the marriage took place after 1850, and that, subsequent to that time, there did accrue to Mrs. Wann moneys, both from the estate of her father, Owen, and of her grandfather, Blackwell. In the absence of countervailing proof, and there is none such in this record, such money, so received, became at once the statutory separate estate of Mrs. Wann, of which her husband was the trustee, with the right to receive and receipt for it. There is no conflict in the testimony, as to the amount derived from the estate

of Robert Owen, the father. The whole amount, including the five hundred dollars received as advancement during Mr. Owen's lifetime, was one thousand and thirty-nine 8-100 dollars. As to the sum received from the grandfather, Mr. Blackwell's estate, there is controversy. The authenticated transcript of a settlement·of the Blackwell estate, had in a County Court of Tennessee, and the testimony of the administrator, tend to show the sum received from that source was four hundred and sixty-nine 53-100 dollars. Several witnesses for the appellee fix the sum at eight hundred and twenty-eight 2-100 dollars. The testimony bearing on this question is not clearly satisfactory. We incline to the conclusion, that the latter is the true sum, and that it probably had been augmented by a sale of the lands belonging to the estate. We, however, leave this question open, as it may be made clearer when the reference comes to be executed. If the larger sum be the true one, then the aggregate of the two distributive interests will be eighteen hundred and sixty-seven 10-100 dollars.

It is contended for appellant, that, irrespective of the question of indebtedness of Wann to his wife on the accounts mentioned above, these conveyances must fall, by reason of actual fraud committed in their execution. In *Crawford v. Kirksey*, 55 Ala. 282, we laid down the rules for determining when a sale of property by an insolvent debtor to his creditor, in payment of a debt, will be adjudged fraudulent. Tested by these rules, we do not think either of these conveyances is infected with actual fraud, if the alleged indebtedness existed. If Wann's purpose was to delay and hinder his creditors, there is no testimony that his wife knew of it, or that she received larger payment than she believed to be due to her. On the hypothesis that Wann owed his wife on the accounts alleged, the charge of actual fraud is not made good.— *Young v. Dumas*, 39 Ala. 60.

It is contended for appellant, that Wann invested his wife's distributive share of her father's estate in the purchase of a slave and a mule; that this was an investment by him which the law authorized, and that therefore he did not owe her on that account. This, of course, refers to the residuum of five hundred and thirty-nine 8-100 dollars, allowed in final settlement, after debiting Mrs. Wann with the five hundred dollars advanced by her father during his lifetime. The slave and mule were purchased by Wann at the sale of the property by the administrator. There is no testimony that he purchased for, or in the name of his wife. This sale must have preceded the settlement and distribution. There is no testimony that the five hundred and thirty-nine 8-100 dollars coming to Mrs. Wann in distribution, covered and paid the purchase price of the slave and mule. The tendency of the testimony is that it did not, and

[Lyne's Adm'r v. Wann.]

that in the final settlement Wann was allowed a credit on his purchase, to the extent of his wife's distributive interest, and in that way received it. This was not an investment for the wife, but a conversion by the husband.—*Smith v. Whitfield,* 71 Ala. 106. To this extent, it is clear that Wann was debtor to his wife.

The alleged advancement of five hundred dollars, made by Mr. Owen in his lifetime, is in a somewhat different category. The testimony is not very clear as to what that consisted of. If it was money, and Wann used and converted it, then it constituted a debt from him to her. If it was property, either in whole or in part, and if there is no proof that that property was sold and the proceeds used and converted by Wann, then it would not constitute a debt from him to his wife. This is a subject for inquiry and report by the register.

The principal sum of his wife's money, received and converted by Wann, will constitute the amount of his indebtedness to her. He was not liable for interest, and consequently interest on the sum furnishes no valuable consideration for either of the conveyances.—*Early & Lane v. Owens,* 68 Ala. 171; *Duffron v. Crump,* 69 Ala. 77. We may as well state here as elsewhere, that Mrs. Wann's title derives no strength whatever from the tax sale and purchase thereunder.—*Johnson & Seats v. Taylor,* 70 Ala. 108.

Applying the foregoing principles, there can be no question, in any statement of the account, that Wann was indebted to his wife in a sum greater than three hundred dollars. The conveyance of the Vienna lots, and the little field mentioned in Wann's deed, purport to be in payment of three hundred dollars of the latter's indebtedness to his wife. The testimony fails to convince us clearly that the lands therein conveyed were, in the condition they were in when the conveyance was made, worth more than the recited consideration—three hundred dollars. That conveyance must stand, and was an extinguishment, *pro tanto,* of Wann's debt to his wife.—*Goodlett v. Hansell,* 66 Ala. 151.

The conveyance of the Drake land rests on different principles. In making up the account of the trust fund which had passed through his hands—statutory separate estate of his wife—Wann debited himself with interest on the fund which he testifies he received and converted. In this way the sum of the indebtedness was footed up, which is made the consideration—the sole consideration—upon which the title of the Drake lands was vested in Mrs. Wann. We say sole consideration; for, in the several payments which were afterwards made in the settlement or compromise with Drake, the moneys of Mr. Wann were used. His wife had no money. She owned only her

[Sawyers v. Baker.]

claim against her husband, and the real estate he had conveyed to her. If her lots had yielded rents, Wann was not liable to account for them. Then, to the extent Wann was in default to his wife for the principal of her statutory estate converted by him, after obtaining credit for the three hundred dollars paid in the Vienna lots, the Drake transaction rested on a valuable consideration. All beyond this was voluntary, and constructively fraudulent, as against creditors. But Mrs. Wann, not being complicated in any actual fraud, holds the Drake lands, as a security for the sum actually due her.—*Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 202. As to these lands, the complainant is entitled to relief, and the decree of the chancellor must be reversed.

Proceeding to render the decree the chancellor should have rendered, it is ordered and decreed that the complainant is entitled to relief, as to the lands known as the Drake place. It is referred to the register to take and state the account, showing the amount of money, distributive interest of his wife in the estates of her father and grandfather, Wann received and converted, or used in and about his own affairs. Property received and used in the family, is not to be charged in this account. For the sum of the principal thus received and converted by him, less three hundred dollars paid in the Vienna lots, Mrs. Wann is entitled to be first paid out of the proceeds of the Drake lands; and the residue will be paid to the complainant in this suit, to the extent ascertained by the decree of the Probate Court. The register will report to the Chancery Court with all convenient speed. All other questions are reserved for decree by the chancellor.

Reversed and remanded.

This decree to take effect as of June 6th, 1882, when this cause was submitted.

