# Hines *v.* Duncan.

*Bill in Equity by Creditor, to subject Equitable Estate of Married Woman.*

1. *Homestead exemption; against what process available.*—The statute which declares that a homestead, of specified value and quantity, "shall be exempt from levy and sale under execution, or other process for the collection of debts" (Code, § 2820), applies not only to formal and technical process, but to any judicial proceeding, at law or in

VOL. LXXIX.

[Hines v. Duncan.]

equity, which seeks the appropriation of the property to the payment of debts.

2. *Same; occupancy.*—When the character of a homestead has been impressed upon a house and lot by actual occupancy, it is not lost by a leasing for twelve months or less (Code, § 2843); but the right of exemption does not attach without actual occupancy, and is lost by failure to resume possession, in case of lease, at or before the expiration of twelve months.

3. *Same; as against bill in equity by creditor seeking to subject equitable estate of married woman.*—A bill in equity by a creditor of a married woman, seeking to subject her equitable estate to the payment of a debt created by contract, creates a lien on the property from the service of process; against which lien a claim of homestead exemption can not prevail, unless the right of exemption existed when the bill was filed.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 20th March, 1885, by Edward F. Hines, as the administrator of the estate of Charlotte Hines, deceased, against Mrs. Bridget Duncan and her husband; and sought to subject a certain house and lot in Mobile, which was alleged to be held by Mrs. Duncan as an equitable estate, to the payment of a note for $200, which was dated February 27th, 1883, payable two years after date, and given by Mrs. Duncan for money borrowed from Mrs. Hines. The house and lot, which was particularly described in the bill, was held by Mrs. Duncan under a deed of conveyance dated March 11th, 1872, which conveyed the property to " her sole and separate use, benefit and behoof;" and a copy of this deed was made an exhibit to the bill. Mrs. Duncan answered the bill, and therein pleaded that the house and lot was occupied and claimed by her as her exempt homestead under the constitution and laws of the State, and that her claim of exemption had been duly filed with the judge of probate on the 14th April, 1885. The complainant thereupon filed an affidavit, contesting the asserted claim of exemption. By written agreement, signed by the counsel of the respective parties and entered of record, it was admitted " that Mrs. Duncan is at this time residing on said property, claiming it as her homestead, but neither she nor her husband was there residing when the original bill in this cause was filed, nor when the summons was served on her, nor for one year previous thereto; that she moved into said house after she was thus sued, and selected and claimed it as her homestead, some days after said bill was filed and summons served, and before filing her answer to the bill." The chancellor held, that the claim of homestead exemption must prevail against the lien acquired by the filing of the bill and service of process in this case, and therefore dismissed the bill, on final hearing on pleadings and proof; and his decree is now assigned as error.

8

[Hines v. Duncan.]

G. L. SMITH, for appellant.—By the filing of his bill, and the service of process under it, the complainant acquired a specific lien on the property sought to be charged; and this lien must prevail against all persons coming in afterwards by purchase or otherwise, or acquiring rights not then in existence. *Turner v. Kelly*, 70 Ala. 95; *Kelly v. Turner*, 74 Ala. 523. Occupancy is an essential ingredient of the right to a homestead exemption, and this must exist at the time the process is served, else it can not override the lien thereby acquired. *Scaife v. Argall*, 74 Ala. 473; *Murphy v. Hunt, Miller & Co.*, 75 Ala. 439. In one sense, the lien acquired by the service of process is inchoate and conditional—that is, it is conditional on the rendition of a final decree in favor of the complainant; but the decree relates back to the service of process, and the lien is effective from that day. It is like the lien of an attachment, which relates back to the levy, and can not be defeated by a claim of homestead under an occupancy subsequent to the levy.—Thompson on Homestead Exemptions, § 318. To refuse the complainant a decree because of the interposition of a claim of homestead, and then allow the claim of homestead because he has no decree, is but reasoning in a circle.

CLOUD & CLOUD, and L. H. FAITH, *contra*.—The filing of the bill, and the service of process under it, created an inchoate lien, which did not ripen into a perfect lien, except as against other creditors, until the rendition of a final decree. The specific lien becomes fixed and operative only from a rendition of a decree.—74 Ala. 513; 70 Ala. 85; 5 C. E. Green, N. J. 109; 7 *Ib*. 127. The debtor may make a selection and claim of homestead, although suit may be pending against him, at any time before a specific lien is fastened on the property.—*Bender v. Meyer & Co.*, 55 Ala. 576; *Schuessler v. Wilson*, 56 Ala. 516; *Weiner v. Sterling*, 61 Ala. 98; *Sherry v. Brown*, 66 Ala. 51; *Zelnicker v. Brigham & Co.*, 74 Ala. 598. A bill in equity against a married woman is the only remedy given by law to charge her equitable estate, and it confers no greater rights on the creditor, except as against other creditors, than the institution of an action at law against an ordinary debtor.

CLOPTON, J.—Statutes conferring on a debtor the right to exemption of property from sale for the payment of debts have been generally regarded as founded in a humane and enlightened policy, having respect to the common welfare, as well as to the benefit of the individual debtor. Their obvious purpose is to secure to each family a home and means of livelihood,

irrespective of financial misfortune, and beyond the reach of creditors ; security of the State from the burden of pauperism, and of the individual citizen from destitution.   Such statutes are entitled to a liberal construction—a construction in conformity with the benevolent spirit which moved their enactment.    Whilst the language of the statute is, "*shall be exempted from levy and sale under execution, or other process for the collection of debts,*" a formal, technical process is not requisite.   The exemption is, in spirit and substantially, from the payment of debts ; and the property is exempt from sale by either process at law or in equity, the subject of which is its appropriation to the payment of debts.   The homestead of a married woman, being her equitable separate estate, is exempt from condemnation, by decree in equity, to pay her debts, if the claim is interposed in proper time and mode.— *Weiner v. Sterling,* 61 Ala. 98.   Notwithstanding such statutes are entitled to a liberal construction, it should not be so liberal as to depart from the plain and obvious meaning of the words used, or to dispense with the necessity of parties bringing themselves within their provisions, without being supplemented or extended by judicial construction.

By statute, any lot in a city, town or village, not exceeding two thousand dollars in value, with the dwelling and appurtenances thereon, owned and occupied by any resident of this State, or, if the same can not be allotted, then two thousand dollars of the value thereof, is exempt from the payment of debts contracted after April 23d, 1873.   If the claim of the exemption of the homestead is not asserted before a sale thereof, it is considered as waived ; but, by our uniform decisions, it may be successfully interposed at any time before a sale, or an order of sale.—*Simpson v. Simpson,* 30 Ala. 225 ; *Sherry v. Brown,* 66 Ala. 51.   If there existed the right to a homestead exemption as against the demand of appellant, it was claimed in due time.

The bill is brought by appellant to subject a lot of land, situate in the port of Mobile, which is the equitable separate estate of Mrs. Duncan, to the payment of a note made by her, February 27th, 1883, to appellant's intestate.   At the time of the filing of the original bill, and of the service of process, neither Mrs. Duncan nor her husband was in the actual occupancy of the lot, and had not been for twelve months previously ; but, some days after the service of process, they moved into the dwelling-house thereon, occupied, selected, and claimed the land as a homestead, and as exempt from the payment of the note.   The right to a homestead exemption is dependent and determinant on the state of facts as they existed at the time the lien of the process attached ; and if the right does

not exist at this time, it can not be created by any subsequent act of the debtor. To be available, there must be a present right of exemption, when the creditor acquires a lien; otherwise it is subordinate thereto—*Scaife v. Argall*, 74 Ala. 473; *Murphy v. Hunt, Miller & Co.*, 75 Ala. 438. The land, unless impressed with the distinctive quality and character of a homestead, is not exempt. Owned and occupied, or, what is the equivalent of occupancy in the meaning of the statute, a present and actual purpose to use and occupy, are essential conditions. When there has been actual occupancy as a dwelling-place, so as to secure the right of exemption, the statute provides: " A temporary quitting, or leasing the same, for a period of not more than twelve months at any one time, shall not be deemed to be an abandonment of it as a homestead." A prior use and enjoyment as a home is requisite to the statutory privilege of temporarily quitting or leasing; and if the owner does not actually occupy the premises, until a lapse of more than twelve months of continuous time, the right of exemption is lost. To sustain a claim of homestead exemption, there must be averment and proof of occupancy.—*Lyne v. Wann*, 72 Ala. 43; *Waugh v. Montgomery*, 67 Ala. 573; *Blum v. Carter*, 63 Ala. 235; Code, §§ 2820, 2843.

There is neither averment nor proof of occupancy before or at the time of the service of process. The availability of the claim of exemption must, therefore, depend on the determination of the question, whether a creditor, by filing a bill to condemn the equitable separate estate of a married woman to the satisfaction of her contracts, and service of process thereon, acquires a lien on the property specifically mentioned, effectual to prevent the accrual of a right of exemption by subsequent occupancy before a decree of condemnation and sale.

It may be regarded as settled in this State, whatever may be the rule in other States, that a bill in equity, with service of process, by a creditor to set aside a fraudulent deed, and have the land of his debtor sold, gives the complainant a lien on the land, which will not be defeated by a *bona fide* sale by the defendant, or under an execution on the judgment of another creditor, which did not have a prior lien. It was so held in *Dargan v. Waring*, 11 Ala. 988; and there has been no subsequent departure from the rule. On the contrary, it has been re-affirmed.—*Evans v. Welch*, 63 Ala. 250. It has been held, that a fraudulent conveyance of the homestead will not deprive the debtor of the right of exemption, though set aside at the instance of creditors; for the reason, that as the creditor had no right to condemn the homestead to the payment of his debt, he is not injured, and has no cause to complain. In such case, the right of homestead exemption had existed before the

filing of the bill, and the debtor had the right to sell and convey without abandoning it. If such be the effect of a suit in equity to set aside a fraudulent conveyance, more cogent reasons exist in favor of the acquisition of a lien by a creditor, who files a bill to subject the equitable separate of a married woman.

At law, the contracts of a married woman are void. She is without capacity to contract a debt, binding on her personally. Having a separate estate, with the power of disposition, which is the creature of equity, her engagements attach a liability to her estate, and not to her personally; and "as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied." The remedy rests on the jurisdiction of the court to reach and subject assets purely equitable,—"a special equitable remedy arising out of a special equitable right." In a bill brought for such purpose, the particular property sought to be subjected must be specifically described. The remedy is also specific, as the court deals only with the property thus mentioned, and its liability. To this extent the proceeding is *in rem*, though in form, and other respects, it is a proceeding *in personam*. In *Kelly v. Turner*, 74 Ala. 513, speaking of the operation of the decree on a bill by a creditor resorting to a court of equity to subject the equitable separate estate of a married woman, and the consequent necessity of specifically describing the property, on which the decree is to operate, it is said : " In this respect, the suit has some of the characteristics of a proceeding *in rem*, though, in form and essential elements, it is a suit *inter partes*. A *lis pendens* is created by the institution of the suit, operative against all persons coming in subsequently, by purchase or otherwise. It creates a specific lien, if successfully prosecuted to final decree ; the decree taking effect, by relation, from the day of the service of summons to answer." Lien, in its enlarged signification, denotes the various charges of debts upon land or personalty, whether created by contract or by statute, or recognized in equity. "In courts of equity, the term *lien* is used to denote a charge or incumbrance on a thing, when there is neither *jus in re*, nor *jus ad rem*, nor possession of the thing."—*Donald v. Hewitt*, 33 Ala. 534. We do not mean to assert, that the mere contract of a married woman creates a lien or distinct charge upon her separate property. But it may be asserted as a general proposition, settled by our former decisions, that a bill in equity, brought to subject her separate property to the satisfaction of her contracts, followed by service of process, creates a lien upon the specific property sought

to be subjected. Such bill, and service of process thereon, are in the nature of an equitable levy, and give the court control of the property, which it will not permit to be withdrawn by any subsequent act or title, so as to render the suit ineffectual. In the absence of such bill, she may dispose of her property, and a purchaser would acquire title, though he had notice of her debts; but, after such suit is instituted,she is not authorized to make a disposition of it by sale or otherwise, or to materially change its *status*. The lien thereby acquired may be defeated or lost by a failure to prosecute the suit to a final decree of condemnation and sale; but it becomes specific, when the suit is prosecuted to a final decree.—*Miller v. Sherry*, 2 Wall. 237.

It may be said, that the lien, being inchoate, will not prevail over a right of homestead exemption acquired by subsequent occupancy, and before the lien is consummated and made specific by a final decree in the suit. The lien acquired by the levy of a writ of attachment is only inchoate, dependent upon the rendition of judgment. If no judgment is rendered, the lien is lost; but, if judgment is obtained, it overrides and defeats any conveyance of the property, subsequent to the levy, and prior to the judgment.—*Reed v. Perkins*, 14 Ala. 231. If the right of a homestead exemption does not exist at the time of the levy of the attachment, its lien can not be defeated by an occupancy subsequent to its levy.— *Kelly v. Dill*, 23 Minn. 435; *Bullem v. Hiatt*, 12 Kan. 98. The land in controversy, being charged with the payment of the note of Mrs. Duncan, when the appellant filed the bill and had process served, he acquired a specific right to have it sold for this purpose—to have such charge made effectual. When a final decree is made, it relates to, and takes effect from the date of the service of process. By the final decree, the lien is made specific from this date, and overrides and defeats all intervening rights and titles. By no subsequent act of the debtor can the lien be defeated. Permitting the subsequent occupancy of the land as a homestead to prevail over such lien, will constitute the statute an instrument of fraud, instead of a shield of protection. In this respect, the lien thus acquired does not differ from a lien secured by the levy of an execution, or of an attachment. It certainly was not the intention of the statutes to confer on the debtor power, by his own act, to deprive a creditor of rights previously acquired. Mrs. Duncan is not entitled to homestead exemption, superior to the previously acquired lien of complainant. She does not bring herself within the provisions of the statutes as heretofore construed.

Reversed and remanded.